**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| ANTHONY W. HIGHMAN, on behalf of | : | CIVIL ACTION |
| himself and others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | NO: 2:23-cv-1757 |
| v. | : | |
| | : | Judge Edmund A. Sargus, Jr. |
| NORTHSTAR CAFÉ EASTON, LLC, | : | Magistrate Judge Elizabeth Preston Deavers |
| et al., | : | |
| Defendants. | : | |
| | : | |

---

**JOINT MOTION FOR APPROVAL OF 216(b) SETTLEMENT AND PRELIMINARY APPROVAL OF THE OHIO RULE 23 SECOND CHANCE SETTLEMENT.**

---

Named Plaintiff Anthony W. Highman ("Named Plaintiff" or "Mr. Highman"), Named Plaintiff Sarah Bates ("Named Plaintiff" or "Ms. Bates"), Named Plaintiff Sarah Taylor ("Named Plaintiff" or "Ms. Taylor") (collectively the "Named Plaintiffs" or "Class Representatives"), and the 272 Opt-in Plaintiffs (collectively "the Plaintiffs") and Defendant Northstar Café Easton, LLC, Defendant Northstar Café Westerville, LLC, Defendant Northstar Café Liberty, LLC, Defendant Northstar Café Shaker Heights, LLC, Defendant Northstar Café Short North, LLC, Defendant Northstar Café, LLC, and Defendant Organic Trails Cafes, LLC (collectively the "Defendants" or "Northstar Café") (the Plaintiffs and the Defendant collectively are the "Parties") have reached a comprehensive settlement agreement (the "Agreement") in this matter. The Parties respectfully move this Court to approve the § 216(b) Settlement and preliminarily approve the Ohio Rule 23 Second Chance Settlement; the terms of which are set out in the Agreement which is attached as **Exhibit A** ("**Ex. A.**") to the Parties' Motion, including a proposed order. The Joint Motion is also supported by the Declaration of Anthony J. Highman, attached as **Exhibit B** ("**Ex. B**"); the Declaration of Sarah

1

Bates, attached as **Exhibit C** ("Ex. C"); the Declaration of Sarah Taylor, attached as **Exhibit D** ("**Ex. D**"); the Declaration of Robert E DeRose, Esq., attached as **Exhibit E** ("**Ex. E.**"); and the Declaration of Jennifer Mills attached as **Exhibit F** ("**Ex. F.**"), and the Individual Payment Data Excel Sheet attached as **Exhibit G** ("**Ex. G.**")  . For the reasons set forth in the accompanying memorandum, this Motion should be **GRANTED**.

Dated: June 17 2025                                    Respectfully submitted,

*/s/ Robert E. DeRose*                                  */s/ Jan E. Hensel*
Robert E. DeRose (0055214)                      Jan E. Hensel (0040785)
Anna R. Caplan (0104562)                          H. Devon Collins (0095657)
**BARKAN MEIZLISH DEROSE COX, LLP**          **Dinsmore & Shohl, LLP**
4200 Regent Street, Suite 210                    191 W. Nationwide Blvd., Ste. 200
Columbus, OH 43219                                 Columbus, OH  43215-5134
Phone: (614) 221-4221                              Phone: (614) 628-6880
Fax: (614) 744-2300                                  Fax: (614) 628-6890
Email:  bderose@barkanmeizlish.com         Email:        jan.hensel@dinsmore.com
                                                                          devon.collins@dinsmore.com

*Counsel for Plaintiffs*

                                                              *Counsel for Defendants*

2

**MEMORANDUM IN SUPPORT OF JOINT MOTION TO APPROVE 216(b) SETTLEMENT AND PRELIMINARLY APPROVE OHIO RULE 23 SECOND CHANCE SETTLEMENT**

#61618591v3

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 6

II.   ISSUES PRESENTED .................................................................................................... 7

III.  SUMMARY OF FACTS AND PROCEDURAL HISTORY .................................................... 7

IV.  THE NOTICE PROCESS ............................................................................................... 9

V.   SUMMARY OF SETTLEMENT TERMS AND CONDITIONS ............................................ 10

    A.    The Settlement Process ............................................................................... 10

    B.    The Settlement Fund ................................................................................... 12

    C.    Individuals Included in the Proposed Settlement Classes and Settlement Deadlines ....... 13

    D.    Settlement Allocation Formula. .................................................................. 13

        1.   Settlement Variables ......................................................................... 14

            a.   Average Weeks Worked. .................................................... 14

            b.   Average Award .................................................................... 14

            c.   Average Total Award .......................................................... 14

            d.   Notice Percentage. .............................................................. 14

        2.   The Section 216(b) Settlement Group Sub-net Settlement Amount. ........................ 15

        3.   The Ohio Rule 23 Second Chance Settlement Class Sub-Net Settlement Amount. 16

        4.   The difference in Individual Payments between the Section 216(b) Settlement Group Members and the Ohio Rule 23 Second Chance Settlement Class Members ........................................................ 16

    E.    Releases ...................................................................................................... 17

    F.    Incentive Awards ....................................................................................... 17

    G.    Ohio Rule 23 Second Chance Settlement Notice ...................................... 18

    J.    Attorney Fees and Litigation Costs ........................................................... 19

VI.  THE AGREEMENT SHOULD BE APPROVED BY THIS COURT. ...................................... 19

    A.    Preliminary Class Settlement Approval Process ....................................... 20

    B.    Rule 23's Requirements Are Satisfied by the Proposed Class Settlement ...... 22

        1. The Proposed Class Satisfies Rule 23(a)(1)'s Numerosity Requirement. ............. 23

        2. The Proposed Class Satisfies Rule 23(a)(2)'s Commonality Requirement. ......... 23

        3. The Proposed Class Satisfies Rule 23(a)(3)'s Typicality Requirement. ............... 24

        4. The Proposed Class Satisfies Rule 23(a)(4)'s Requirement for Adequacy of Representation ........................................................ 25

5. The Proposed Class Satisfies Rule 23(b)'s Requirement for Predominance and Superiority. ...................................................................27

    i. Predominance Under Rule 23(b)(3). ......................................27

    ii. Superiority Under Rule 23(b)(3). ..........................................28

C. The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation. ...................30

1. The Proposed Settlement is Fair ...........................................................31

    i. Posture of the Case. ..............................................................31

    ii. Extent of Discovery ..............................................................32

    iii. Circumstances Surrounding Negotiations.............................32

    iv. Experience of Counsel ..........................................................33

VI. CONCLUSION ...........................................................................................34

CERTIFICATE OF SERVICE ..............................................................................34

## I.    <u>INTRODUCTION</u>

This is a hybrid collective and class action lawsuit for unpaid minimum wages and overtime wages brought by Mr. Highman, Ms. Bates, Ms. Taylor (collectively the "Named Plaintiffs" or "Class Representatives") on behalf of themselves and all other similarly situated current and former hourly employees of Northstar Café who were subject to the Tip-Credit and Tip Pool (collectively "Plaintiffs') who claim among other things they were not properly compensated at the correct federal and or Ohio minimum wage rates and overtime wage rates. Plaintiffs have alleged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. to recover their unpaid minimum wages and statutorily prescribed penalties. In addition to their claims under the FLSA, Plaintiffs further allege Ohio Minimum Fair Wage Standards Act (the "Ohio Wage Act"), O.R.C. §§ 4111, *et seq.*, Ohio Wage Act and Ohio Constitution, Art. II Section 34a claims pursuant to Fed. R. Civ. P 23.

The Parties have reached a comprehensive settlement in this case. The Total Settlement Amount[1] that Northstar Café will pay the Plaintiffs, and the Settlement Class Members[2] is eight hundred thirty-five thousand dollars and no cents ($835,000.00), inclusive of attorneys' fees, costs, expenses, court-approved enhancement awards for the Named Plaintiffs, the Claims Administrator's fees and expenses, and payroll withholdings/taxes.[3] Northstar Café will tender this Total Settlement Amount to the Claims Administrator, Rust Consulting, Inc. The Parties believe the Agreement is fair, reasonable, and adequate and that it satisfies all criteria for settlement approval under binding Sixth Circuit precedent.

---

[1] *See* **Ex. A**. at ¶ 1.47.

[2] "Settlement Class Members" means the FLSA Collective Action Members and Ohio Rule 23 Second Chance Class Members collectively. *See* **Ex. A**. at ¶ 1.45.

[3] NorthStar Café will separately pay all employer portions of the payroll taxes, and the employer portion of payroll taxes will not be taken from the Total Settlement Amount. *See* **Ex. A**. at ¶ 2.7.

## II.    ISSUES PRESENTED

By this Joint Motion, the Parties ask the Court to: (1) approve the Rule 216(b) settlement for the 272 Plaintiffs who received and returned their executed Notice; and (2) preliminarily approve the Ohio Rule 23 Second Chance Settlement.

## III.    SUMMARY OF FACTS AND PROCEDURAL HISTORY

Named Plaintiffs sought relief pursuant to Fair Labor Standards Act 29 U.S.C. § 201 et seq. for violations of the tip credit, tip pool, minimum wage laws, and overtime laws.[4] After several amendments, the operative complaint is the Fourth Amended Complaint.[5] After Northstar Café' filed its answer (ECF No. 24), and to avoid costly litigation, the Parties agreed to attempt mediation after an exchange of discovery related to how the Plaintiffs were paid during the Calculation Period. (June 12, 2020 to May 24, 2023)  *See* ECF No. 10.

Plaintiffs' Counsel analyzed the weekly payroll during the Calculation Period for all sixteen (16) Plaintiffs. This included tip information for each Plaintiff.[6] After several months of analysis, the Plaintiffs developed a damages model and sent Defendants their demand.[7] The Parties mediated live before an experienced mediator, Jerome F. Weiss, Esq. on October 18, 2023. The Parties' mediation was not successful; however, they continued to negotiate on their own, resulting in several requests for stay of proceedings, which the Court granted. On February 15, 2024, the Parties successfully resolved the case and notified the Court. *See* ECF. No. 26. The Court gave the Parties until March 18, 2024, which was subsequently extended to April 15, 2024, to file their Motion to Approve the Settlement and a proposed stipulated notice. *See Court's February 16, 2024 non-document Order.*

---

[4] *See* ECF No 1.

[5] ECF. No. 34.

[6] *See* **Ex. E**. at ⁋ 18.

[7] *See Id.*

7

On April 15, 2024, the Parties filed a Joint Motion for Stipulated Court Supervised Notice and Approval of Settlement Pursuant to Section 216(b) of the Fair Labor Standards Act and Preliminary Approval of the Ohio Rule 23 Second Chance Settlement. *See* ECF No. 35. On February 4, 2025, the Court denied the Parties' Joint Motion without prejudice, raising questions about the Plaintiffs' representative authority and how the number of putative plaintiffs who joined the FLSA Settlement would impact the fairness of the Rule 23 settlement. *See* ECF No. 37. The Court instructed the Parties to refile as two separate motions: one for Court-Supervised Notice and now, a Motion for Settlement Approval.

The Parties re-filed their Joint Motion for Court Supervised Notice ("the Re-filed Motion for Notice") on February 15, 2025. *See* ECF No. 38. The Court granted the Motion on February 27, 2025[8], authorizing notice to be sent to the following group of individuals defined as:

> **All current and former tipped employees who worked for Northstar Café at any time between June 12, 2020, through May 24, 2023 who were subject to the tip credit.**

Additionally, the Court found that the Parties' proposed revised opt-in Notice Form and Claim Form ("Notice Packet") were satisfactory. *See* ECF No. 39. The Notice Packet contained language informing potential Settlement Class Members that the settlement would not take effect without this Court's final approval, and that all potential plaintiffs will have an opportunity to opt-in to the action and to object to the approval of the settlement. *Id.* This language directly addressed the Court's original concerns.

---

[8] *See* ECF No. 39

#61618591v3

## IV.    THE NOTICE PROCESS

The Parties, in their the Re-filed Motion for Notice, suggested the following timeline for processing notice, to which the Court agreed to in its February 27, 2025 Opinion and Order:

- Defendants had fourteen (14) days to provide the Claims Administrator with a spreadsheet containing the names, last known addresses, zip codes, cell phone numbers, and personal email addresses (to the extent known) of the potential opt-in plaintiffs

- The Claims Administrator was Ordered to mail the approved notice and consent forms to the potential opt-in plaintiffs via First Class mail within 14 days of receiving the list. If the mail was undeliverable, notice was permitted to be sent by email.

- The potential opt-in plaintiffs were permitted 30 days from the date the notice and consent forms were sent to return their FLSA Claim Form and opt into this case. *Id.*

Pursuant to the Order, Defendant provided the Claims Administrator, Rust Consulting, with the Class List on or about March 11, 2025. *See* **Ex. F** at ¶8. The Class List included 1,139[9] potential FLSA Collective Action Members. *See Id.* Of the 1,139 potential FLSA Collective Action Members, 16 had already joined the lawsuit as plaintiffs. On March 27, 2025, Rust Consulting mailed the Court-approved 216(b) Notice Packet to the remaining identified FLSA Collective Members. *See Id* at ¶10. Of the 1,139 Notice Packets mailed, 82 were returned as undeliverable. *Id* at ¶11. Rust Consulting performed skip trace searches and was able to resend 64 Notice Packets to the FLSA Collective Members. *Id.* Rust Consulting was not able to obtain updated addresses for the remaining 18 Class Members. *Id.* Of the 64 Notice Packets mailed to a more current address identified from trace, 0 Notices were returned as undeliverable a second time. *Id.* As of this date, 21 Notices remain undeliverable, and 3 Notices were returned by the Post Office with forwarding addresses attached. *See*

---

[9] The total number of potential Class Members was 1,143, but four (4) Plaintiffs who had already joined were not remailed notice.

#61618591v3

*id.* at ¶12. Rust Consulting either promptly re-mailed Notice packets to those FLSA Collective Members or e-mailed Notice pursuant to the Court's Order February 27, 2025 permitting Notice via email should mail be undeliverable. *Id. See also* ECF No. 39. As of the date of this filing, the Notice of FLSA Action Settlement has been delivered to 96.59% of the class.

The 30-Day Notice Period ("Notice Period") extended from March 27, 2025 to April 26, 2025. *See* **Ex. F** at ¶10**.** A total of 272 FLSA Collective Members have returned their Claim Form, which is approximately 24% of the total potential FLSA Collective Action Settlement Group Members. With the total number of FLSA members and individual payment amounts now determined, the Parties are confident that the Court's prior concerns regarding fairness have since been adequately addressed.

## V.      Summary of Settlement Terms and Conditions

The Agreement contains several salient components. Such components include in part (1) process for approval of the Parties' Section 216(b) Notice Packet; (2) payments to FLSA Collective Action Members from the Section 216(b) Settlement Group Sub-Net Settlement Amount in exchange for releases and dismissals; (3) payments to Ohio Rule 23 Second Chance Settlement Class Members from the Ohio Rule 23 Second Chance Settlement Class Sub-Net Settlement Amount in exchange for releases and dismissals; (4) appointing Rust Consulting as the Claims Administrator and approving payment for their services; and (5) payment of Class Counsel's attorneys' fees and expenses. These components, as well as additional terms of the settlement agreement, are discussed below.

### A.      The Settlement Process.

The Agreement calls for a multi-staged settlement process.

    1.   Court approval of the Parties Agreement, which includes,

        a.   Approval of the FLSA settlement pursuant to 29 U.S.C. § 216(b) (the "§ 216(b) Settlement."), and

    b. Preliminary approval of the Ohio Rule 23 Second Chance Settlement, including the Ohio Rule 23 Second Chance Settlement Notice.

    c. Court sets a deadline for the Parties to file the Final Approval of the Ohio Rule 23 Second Chance Settlement and sets the Final Approval Hearing.[10]

2. Court approval of the Parties' Proposed Section 216(b) Approval Order including the § 216(b) Notice Packet.[11]

3. The Total Settlement Amount is transferred to Rust Consulting and placed in the QSF.[12]

4. Rust Consulting issues FLSA Notice Packet.[13]

5. Rust Consulting issues the Ohio Rule 23 Second Chance Settlement Notice ("Rule 23 Notice").[14]

6. The Ohio Rule 23 Second Chance Settlement Opt-Out Period concludes, and the damages are calculated for those who did not opt-out of Ohio Rule 23 Second Chance Settlement (the "Ohio Rule 23 Second Chance Settlement Class"). [15]

7. Final Approval is granted after the Final Approval Hearing.

8. Settlement distribution commences.

9. Any remining funds after the check negotiation date reverts to the *cy pres*.[16]

---

[10] *See* **Ex. A**, ¶ 3.4.

[11] *See* **Ex. A**, ¶¶ 1.41, 2.9.

[12] *See* **Ex. A**, ¶ 4.1.

[13] *See* **Ex. A**, ¶ 3.2(b).

[14] *See* **Ex. A** ¶ 3.3(b) and **Ex. A-6.**

[15] *See* **Ex. A**, ¶¶ 1.31, 1.32, 3.3 (b)-(c).

[16] *See* **Ex. A**, ¶ 2.5(e).

#61618591v3

### B.    The Settlement Fund.

The Parties have agreed to the settlement of this matter for the Total Settlement Amount of Eight-hundred, thirty-five thousand dollars and Zero Cents ($835,000.00).[17] The Total Settlement Amount is intended to be all inclusive and includes specifically amounts approved by the Court for Class Counsel's attorneys' fees and out-of-pocket expenses, litigation costs, settlement administration fees and costs, employee-share payroll withholdings/taxes, and incentive awards for the three (3) Representative Plaintiffs ($10,000.00 each)—the remaining funds shall constitute the Net Settlement Amount.[18]

The Net Settlement Amount[19] shall be paid to the FLSA Collective Action Members and the Ohio Rule 23 Second Chance Settlement Class (collectively the "Ohio Settlement Class Members") as their Individual Payments. The Individual Payments shall be calculated by each Settlement Class Members' *pro rata* share of total aggregate workweeks during the applicable Calculation Period. The "Calculation Period" for the Individual Payments shall be June 12, 2020, to May 24, 2023, for payments made to the Settlement Class Members.[20] The Individual Payments will be divided 50% to alleged wages and 50% to alleged non-wages.

To the extent any portion of the Individual Payments allocated to wages remains unclaimed (such that a check was not deposited before the void date or an individual elects to opt-out of the Ohio Rule 23 Second Chance Settlement), those funds shall be paid to the *cy pres* recipient agreed to by the Parties: specifically, the Mid-Ohio Food Bank.[21] To the extent a portion of the Individual Payments allocated to non-wage penalties remains unclaimed (such that a Claim Form was not

---

[17] *See* **Ex. A**, ¶¶ 1.47 and 2.5

[18] *See* **Ex. A**, ¶¶ 1.10 and 1.28.

[19] *See* **Ex. A**, ¶ 1.28.

[20] *See* **Ex. A**, ¶¶ 2.5(c) and (d).

[21] *See* **Ex. A**, ¶¶ 1.7, 2.5(e).

returned by the class member, the check was not deposited before the void date, or an individual elects to opt-out of the Ohio Rule 23 Second Chance Settlement), those funds shall be paid to the *cy pres* recipient.[22]

### C. Individuals Included in the Proposed Settlement Classes and Settlement Deadlines.

The Parties have agreed that the Settlement creates two classes, 1) the FLSA Collective Action Members - the 272 Plaintiffs who returned the FLSA Claim Form[23] and the Ohio Rule 23 Second Chance Settlement Class - which includes all of the Putative Opt-in Plaintiffs who did not return a timely FLSA Claim Form and did not opt-out of the Ohio Rule 23 Second Chance Settlement.[24]

### D. Settlement Allocation Formula.

After calculating the Section 216(b) Settlement Group Sub-Net Settlement Amount (the amount remaining after deducting the Fees, Costs, Service Award Subtotal)[25], the Claims Administrator calculated the Individual Payments for the § 216(b) Settlement Group and Ohio Rule 23 Second Chance Settlement Class. *See* **Ex. G.**

#### 1. *Settlement Variables*

The Settlement Variables were calculated after extensive review and analysis of the exact number of weeks worked and the payroll and tip information for the original thirteen (13) Plaintiffs who had opted-into this lawsuit prior to the Court's granting of Notice.[26]

---

[22] *See* **Ex. A**, ¶ 4.4(c).

[23] *See* **Ex. A**, ¶ 1.19.

[24] *See* **Ex. A**, ¶ 1.32.

[25] *See* **Ex. A**, ¶ 1.43.

[26] Three (3) Plaintiffs opted into the lawsuit after the damages were calculated, but prior to the Court granting supervised Notice. *See* **Ex. E**, ¶ 18.

#61618591v3

### a. Average Weeks Worked

The 1143 Total Class Members[27] worked 35,018 weeks from June 12, through May 24, 2023, the Calculation Period. The average weeks worked per Putative Opt-in Plaintiff was 30.64 weeks.[28]

### b. Average Award

The Average Weekly Award was calculated by dividing the $835,000.00 by 35,018 for a quotient of $23.84.[29]

### c. Average Total Award

The Average Total Award is the Average Weekly Award multiplied by the Average Weeks Worked, or $730.53.[30]

### d. Notice Percentage

Prior to the Court's granting of Court Supervised Notice, there were sixteen (16) Plaintiffs of the 1143 Total Class Members that had joined the lawsuit, leaving 1,127 Putative Opt-in Plaintiffs. The original settlement distribution assumed 40% of the 1,127 Putative Opt-in Plaintiffs, or 452, would join the Plaintiffs to form the FLSA Collective Action Members.[31] The Notice Percentage variable was doubled since the recipient was informed that they will receive a settlement payment if they join.[32] However, since the Notice Period ended, 272 FLSA Collective Action Members have joined the lawsuit, which is approximately 24% of the Total Class Members; the typical FLSA notice participation rate is 5% to 10%.[33]

---

[27] *See* **Ex. A**, ¶ 1.46.

[28] *See* **Ex. A**, ¶ 1.5, *See also*, **Ex. E**, ¶¶ **20-22**.

[29] *See* **Ex. A**, ¶ 1.4, *See also* **Ex. E**, ¶ 21.

[30] *See* **Ex. A**, ¶ 1.3, *See also* **Ex. E**, ¶ 22.

[31] *See* **Ex. A**, ¶¶ 1.19, 1.30 and 1.43; *See also* **Ex. E**, ¶ 23.

[32] *See* **Ex. E**, ¶ 25.

[33] *See* **Ex. E**, ¶ 24 and ¶ 26.

#61618591v3

### 2. *The Section 216(b) Settlement Group Sub-Net Settlement Amount*

The Agreement provides for the Section 216(b) Settlement Group Sub-Net Settlement Amount to have access to a set amount of funds from the Net Settlement Amount.[34] The Section 216(b) Settlement Group Sub-Net Settlement Amount is $330,201.22.[35] The Claims Administrator calculated each FLSA Collective Action Members' Individual Payment by multiplying the number of workweeks they actually worked during the Calculation Period by the Average Weekly Award. The Section 216(b) Settlement Group Sub-Net Settlement Amount had more than adequate funds to pay 272 FLSA Collective Action Members their Average Weekly Award based on the number of weeks they worked in the Calculation Period before any *pro rata* deduction.[36] The 272 FLSA Collective Action Members total claims are $276,877.76,[37] leaving $53,323.46 remaining in the Section 216(b) Settlement Group Sub-Net Settlement Amount.

The Agreement also provides a "second chance" fund, the Ohio Rule 23 Second Chance Settlement, described below. The $53,323.46 remainder will be added to the Ohio Rule 23 Second Chance Settlement Class Sub-Net Settlement Amount.[38]

### 3. *The Ohio Rule 23 Second Chance Settlement Class Sub-Net Settlement Amount*

The Settlement provides for any Putative Opt-in Plaintiff who did not join the lawsuit to be informed that they are given a "second chance" to be paid some of their unpaid wages, a "second chance" settlement. To accomplish this, the Parties set aside $153,734.65 based on the number of weeks they actually worked for Northstar Café during the Calculation Period, the Ohio Rule 23 Second

---

[34] *See* **Ex. E**, ¶ 26.

[35] *See* **Ex. A**, ¶ 1.43, *See also* **Ex. E**, ¶ 18, **Attach. 3**.

[36] *See* **Ex. E**, ¶ 28 and **Attach. 3**.

[37] *See* **Ex.** F(¶**14,** ¶iii)

[38] *See* **Ex. A**, ¶ 2.5(c), *See also* **Ex. E**, ¶ 30 and ¶ 32.

15

Chance Settlement Class Sub-Net Settlement Amount.[39]  The final Ohio Rule 23 Second Chance Settlement Class Sub-Net Settlement Amount when the $53,323.46 remaining in the Section 216(b) Settlement Group Sub-Net Settlement Amount was added is $207,058.11[40]

The Ohio Rule 23 Second Chance Settlement Class will receive a *pro rata* portion of the $207,058.11 based on the total number of workweeks applicable to the Ohio Rule 23 Second Chance Settlement Class based on data provided by Northstar Café.[41] The quotient from that equation will be the workweek value for the Ohio Rule 23 Second Chance Settlement Class, 22,586. Each Ohio Rule 23 Second Chance Settlement Class Member will subsequently have their respective number of workweeks multiplied by $9.17 to determine their Individual Payments.[42]

> 4. *The difference in Individual Payments between the Section 216(b) Settlement Group Members and the Ohio Rule 23 Second Chance Settlement Class Members.*

The difference in payments between the Section 216(b) Settlement Group Members and the Ohio Rule 23 Second Chance Settlement Class Members is attributable to the fact that the Ohio Rule 23 Second Chance Settlement Class Members had an opportunity to join the FLSA Collective Action Members and failed to do so. However, the "second chance" fund is still based on the same core variable, the number of weeks they actually worked in the Calculation period. The reduction recognizes that the payment is a "second chance" to get relief without doing anything.

**E.    Releases**.

Each FLSA Collective Action Member received, and the Ohio Rule 23 Second Chance Settlement Class Members will receive their respective Notice Forms which describe the Civil Action,

---

[39] *See* **Ex. A**, ¶ 2.5(d), see also, **Ex. E.** at ¶ 28, **Attach**. **3**.

[40] *See* **Ex. F,** ¶14(iv)

[41] *See* **Ex. A**, ¶ 2.5(d), see also **Ex. E**. at ¶ 34.

[42] *See* **Ex. A**, ¶ 2.5(d), *see also* **Ex. E**. at ¶ 35.

the settlement process, and the scope of the applicable releases.[43] Upon final approval of the Agreement, the releases will apply to the Settlement Class Members who do not opt-out of the settlement, whether or not they cash their Individual Payment checks.

In exchange for (a) the dismissal of the claims alleged in the Civil Action with prejudice; (b) the Releases described in ¶ 5 of the Settlement Agreement; and (c) otherwise subject and pursuant to the terms and conditions of the Agreement, Northstar has agreed to pay a sum of $835,000.00, as the Total Settlement Amount for purposes of compensating all Settlement Class Members.[44]

### F. Incentive Award.

In return for the risk the Named Plaintiffs incurred and the services they rendered to the Settlement Class Members, including but not limited to providing documentation, assistance with review of document production, damages chart calculation assistance, and participation in the mediation and continued negotiations, additional funds ($30,000.00) were separately negotiated as consideration for their general releases (to be effective, if at all, only upon Final Approval of the Agreement). Accordingly, the Claim Representatives request Court approval of Incentive Awards of $10,000.00 each in addition to their Individual Payments.[45] This number is slightly higher than typical service awards; however, the Claim Representative devoted a significant amount of time and effort on behalf of the class and are justified in receiving this amount. *See Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (granting the requested $10,000 service award for two Class Representatives and calling the award "modest"); see also, *Johnson v. Midwest Logistic Sys., Ltd.,* No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving a service award of $12,500 to the Named Plaintiff from a $452,380 settlement); see also, *Castillo v. Morales*, No.

---

[43] Claim Representatives entitled to an Incentive Award shall also be subject to a general release of all claims against NorthStar Café.

[44] *See* **Ex. A**, ¶ 5.

[45] *See* **Ex. A**, ¶ 2.11 see *also,* **Ex. E.** at ¶ 37.

2:12-CV-650, 2015 WL 13021899, at *2 (S.D. Ohio Dec. 22, 2015) (granting the requested $8,000 service award for Named Plaintiff for the high amount of time and risk assumed).

### G.     Ohio Rule 23 Second Chance Settlement Notice Constitutes Best Notice Practicable

FRCP 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007). Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the last known addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, cert. denied, 423 U.S. 864 (1975). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

The proposed Ohio Rule 23 Second Chance Settlement Notice satisfies these requirements. It notifies the Ohio Rule 23 Second Chance Settlement Class of the class action and the pending FLSA and state law claims. The Notice is designed to inform the Ohio Rule 23 Second Chance Class **a second time** of the substantive terms of the proposed Agreement, including the amount to be requested for attorneys' fees/litigation expenses and Incentive Awards, their rights regarding the

18

settlement, how to fully participate in the settlement, and how to exclude themselves from, or object to, the Rule 23 class.[46]

### J. Attorneys' Fees and Litigation Costs

Under the terms of the Agreement, subject to Court approval, the parties agree that Class Counsel will receive $286,064.13 in attorneys' fees along with their actual litigation expenses and costs, which together represent payment of all reasonable attorneys' fees, expenses, and costs associated with the lawsuit.[47] These attorneys' fees and costs were negotiated separately, are paid directly from the Maximum Settlement Amount, and do not affect the Net Settlement Fund amount, Ohio Rule 23 Second Chance Fund, or increase the Defendant's liability beyond the agreed-upon cap of $835,000. Class Counsel will receive IRS Form 1099s for the approved payments, and all fees are considered full and final payment for the legal representation provided to the Plaintiffs and the Settlement Class/Collective. This structure ensures that Settlement Class Members receive their settlement payments without bearing any additional financial burdens associated with litigation costs. Class Counsel will respectfully show that the requested amount is fair and reasonable in a motion for approval of attorney's fees and costs to be filed before the Final Fairness Hearing.

## VI. THE AGREEMENT SHOULD BE APPROVED BY THIS COURT.

Federal Rule of Civil Procedure 23(e) requires court-approval of any proposed settlement of a class action lawsuit and further requires that class members receive notice of the settlement before the court approves it. *UAW*, 497 F.3d at 626. The FLSA also requires court approval of settlements. *See Landsberg v. Acton Enterprises, Inc.*, No. C2-05-500, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. US*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should

---

[46] *See* **Ex. A**, ¶ 3.3(c).

[47] *See* **Ex. A**, ¶ 1.2.

determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, at n.8 (1946)). The factors governing court approval of settlements under Rule 23 and the FLSA are similar. *See Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (observing "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'")

There are typically three stages applicable to the review of a proposed class action settlement. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632–.634. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *See id.* at § 21.632 (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* at § 21.633. Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.* at § 21.634.

### A.      Preliminary Class Settlement Approval Process

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases); *see also Kidwell v. Transpt. Commc'n Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991), cert. den., 503 U.S. 1005 (1992) (recognizing the "[t]rend is to give Rule 23 a liberal construction"). When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement. *See* FED. R. CIV. P. 23(e). Although Rule 23(e) does not delineate a procedure for court approval of

20

settlements of class actions, district courts have followed a multi-step process. *See* FED. R. CIV. P. 23(e)(2).

At the preliminary approval stage, courts must both ensure that all of the requirements of Rule 23(a) and one of the sections of 23(b) are satisfied and determine that the settlement falls within the range of possible approval. *See* FED. R. CIV. P. 23(a)–(b); *Cross v. Hots, Inc.*, No. 1:18-CV-276, 2019 WL 12288177, at *3 (W.D. Mich. Mar. 21, 2019). In deciding a motion for preliminary certification, district courts "[c]onduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *Cross*, 2019 WL 12288177, at *3 (quoting *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 350 (N.D. Ohio 2001)). Federal courts find that preliminary approval of settlement and notice to the proposed class is appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Cross*, 2019 WL 12288177, at *3.

There is a strong judicial policy in favor of settlement. *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127, at *2 (E.D. Tenn. Mar. 8, 2018), *report and recommendation adopted*, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *see also Lynn's Food Stores*, 679 F.2d 1350, 1354 (11th Cir. 1982); *Little Rock Sch. Dist. V. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (in a class action context, providing that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"); *Ortega v. Uponor, Inc. (In re Oponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) (providing that "[a] settlement agreement is presumptively valid" in a class action context); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d

21

96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

**B.     Rule 23's Requirements Are Satisfied by the Proposed Class Settlement**

The Parties seek class certification under Rule 23(b)(3). The certification requirements of Rule 23 generally apply even when certification is for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* FED. R. CIV. P. 23(b)(3). To be certified, the proposed class must first satisfy the four threshold requirements of Rule 23(a), which provide that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*See* FED. R. CIV. P. 23(a).

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3). Rule 23(b)(3) requires the district court to make a finding that (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) that a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. *See id.* at 23(b)(3). However, the trial court does not examine the merits of the underlying claims when it decides a motion for class certification. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974).

22

1.  <u>The Proposed Class Satisfies Rule 23(a)(1)'s Numerosity Requirement</u>

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *See id.* at 23(a). There is no set number of members necessary for class certification and the decision to certify or not certify a class must be based upon the particular facts of each case. There are approximately 878 class members in the Ohio Rule 23 Second Chance Class.[48] Such a "substantial number" satisfies the numerosity requirement. *See Miller v. Charter Nex Films - Delaware, OH, Inc.*, No. 2:18-CV-1341, 2020 WL 2896913, at *3 (S.D. Ohio June 2, 2020) (finding a class of 147 members satisfied the numerosity requirement) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). These numbers clearly show that individual joinder would be impracticable—if not impossible. *See id.* (citing *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012)).

2.  <u>The Proposed Class Satisfies Rule 23(a)(2)'s Commonality Requirement</u>

Under the "commonality" requirements of Rule 23(a)(2) of the Federal Rules of Civil Procedure, at least one common question of law or fact must exist among class members. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). Commonality under Rule 23(a)(2) is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation. *Walmart Stores, Inc. v. Dukes*, 564 U.S. 348, 350 (2011).

> Their claims must depend on a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* Typically, commonality is satisfied when all claims are based on the same legal theory—that workers were not paid all promised wages when due, factual difference among the putative class members will

---

[48] This number is governed by the number of Putative Opt-in Plaintiffs who choose to opt into the Section 216 (b) Settlement.

not defeat certification. *See Miller*, 2020 WL 2896913, at *3. Here, the commonality requirement is satisfied because the Representative Plaintiffs, and the Ohio Rule 23 Second Chance Class Members alleged that they were subjected to the same company-wide policy to require servers, during their shift, to perform non-tip producing work unrelated to the servers' tipped occupation, as well as non-tip supporting work related to the servers' tipped occupation.[49] The Plaintiffs alleged that they were likewise subjected to the same companywide policy in which the Plaintiffs and those similarly situated were required to spend significantly more than 20% of their work time performing non-tip producing work.[50] Additionally, the Plaintiffs alleged that they were all subject to a companywide policy and practice whereby servers were required to spend significantly more than thirty (30) consecutive minutes of their work time performing this abovementioned non-tip producing and non-tip supporting job duties each shift, predominately occurring one hour before a store opens to one hour after a store closes until they clock out.[51] As such, the success or failure of each Ohio Rule 23 Second Chance Settlement Class Member's claim turns on the same common questions pertinent to the application of Northstar Cafe's alleged policies to the Ohio Rule 23 Second Chance Settlement Class.

### 3. The Proposed Class Satisfies Rule 23(a)(3)'s Typicality Requirement

Rule 23(a)(3) provides class certification is appropriate where the claims of the representative plaintiffs are typical of the claims of the class. The typicality requirement "goes to the heart of a representative parties' ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "[T]he test for typicality is not demanding." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001). Instead, the typicality inquiry focuses on the "similarity between the named plaintiffs' legal

---

[49] (ECF No. 20 at PAGEID#174 ¶ 43); *See also*, **Ex. B**. at ¶¶ 5,8; **Ex. C**. at ¶¶ 9,10 and **Ex. D**. at ¶¶ 10,11.

[50] (ECF No. 20 at PAGEID#174 ¶ 47); *See also*, **Ex. B**. at ¶ 8; **Ex. C**. at ¶ 10 and **Ex. D**. at ¶ 11.

[51] *See Id.*

and remedial theories and the theories of those whom they purport to represent." *See Id.* (citations omitted).

> Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Id.* (quoting 5 *James W.M. Moore, et al.*, MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

"A plaintiff's claim is typical [under Rule 23(a)(3)] if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Miller*, 2020 WL 2896913, at *4 (quoting *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 286 (E.D. Mich. 2017)). Here, the proposed Ohio Rule 23 Second Chance Settlement Class Members rely upon the same course of conduct—Northstar Café's policies and procedures governing its overtime payments and employees' tip-pool and tip-credits applied equally to all putative class members and they share the same legal interest in recovering their unpaid wages based on the same legal theories—to argue that the Defendants violated the Fair Labor Standards Act and the Ohio Wage Act. Thus, the typicality requirement, which is "not onerous," is also satisfied. *Id.* Here, the Claim Representatives submit there are no factual distinctions between their claims and those of the Ohio Rule 23 Second Chance Settlement Class Members.

### 4. The Proposed Class Satisfies Rule 23(a)(4)'s Requirement for Adequacy of Representation

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n. 13 (1982)). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Tex. Motor Freight System,*

*Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Miller*, *2020* WL 2896913, at *4 (quoting *Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 WL 4159682, at *6 (S.D. Ohio Aug. 5, 2016) (citations and quotations omitted). In this regard, "[t]he two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* (quoting *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. at 286 (quotation and citations omitted)).

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are met: (1) there is no conflict between the interests of the Class Representatives and the Ohio Rule 23 Second Chance Settlement Class; and (2) Class Counsel are experienced in litigating complex hybrid class/collective actions like the one at issue. First, the Class Representatives contend the following, (1) Class Representatives are typical of the class, so they will fairly and adequately represent the interests of the class; (2) there is no potential conflict between them and the other members of the proposed class because they are challenging pay policies that applied uniformly to all class members; and (3) Class Representatives' interests do not differ from those of the class as a whole, in that they seek to benefit the proposed class by obtaining damages for all class members. Second, Class Counsel are experienced in this type of litigation, having litigated many collective actions and/or class actions on behalf of tip-pool employees across the United States, and have the resources to fully litigate this matter through trial on the merits, should such further litigation be required.[52]

---

[52] *See* **Ex. E**. at ⁋ 38.

     5.    The Proposed Class Satisfies Rule 23(b)'s Requirement for Predominance and Superiority

Class certification under Rule 23(b)(3) requires that common issues of law or fact predominate over individual issues and that the class action be the superior method of dealing with the dispute. *See* FED. R. CIV. P. 23(b).

     i. *Predominance Under Rule 23(b)(3)*

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011) (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)). While the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that common questions will predominate over individual ones. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012). Hence, "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

In this case, the proposed classes satisfy the Rule 23(b)(3) predominance requirement because all Ohio Rule 23 Second Chance Settlement Class members share a common set of core predominate facts and legal issues, including but not limited to:

1)   All Ohio Rule 23 Second Chance Settlement Class members worked for Northstar Café as servers;

2)   All Ohio Rule 23 Second Chance Settlement Class members were paid by the hour;

3)   All Ohio Rule 23 Second Chance Settlement Class members were subject to the same tip-pool and tip-credit policies;

4)   Whether servers were required to perform non-tip producing work unrelated to the servers' tipped occupation.

27

5)  Whether servers were required to perform non-tip supporting work related to the servers' tipped occupation;

6)  Whether servers were required to spend significantly more than 20% of their work time performing non-tip producing work.

7)  Whether servers were required to spend significantly more than thirty (30) consecutive minutes of their work time performing the above-mentioned non-tip producing and non-tip supporting duties each shift; and,

8)  Whether Northstar Café had a good faith basis for believing its tip policies were legal under federal and Ohio state law.

As such, common issues predominate over issues that are only individual in nature.

ii.   *Superiority Under Rule 23(b)(3)*

"The superiority inquiry is whether a 'class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Miller*, 2020 WL 2896913, at *5 (quoting Fed. R. Civ. P. 23(b)(3)). This requirement aims to "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* (quoting *Amchem*, 521 U.S. at 615). Courts consider the related factors set forth in Rule 23(b)(3) itself when considering superiority. *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 415-16 (6th Cir. 2018). Those include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). Courts also look at practical reasons that a class action may be superior such as the preservation of judicial economy. *Manuel v. Wells Fargo Bank, N.A.*, No. 3:14-cv-238, 2015 U.S. Dist. LEXIS 109780, at *48 (E.D. Va. Aug. 19, 2015).

Numerous courts have held class actions are superior in wage cases because of the threat of retaliation. *See, e.g., Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) ("Courts have considered risk of reprisal by an employer as weighing in favor of certification"); *Perez v. Safety-Kleen*

*Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior in employment context because, inter alia, "some class members may fear reprisal"). Indeed, one court has explained that fear of employer retaliation against individuals is "a very important concern" because "the nature of the economic dependency involved in the employment relationship is inherently inhibiting." *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 350 (N.D. Ill. 2001); *see also Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 500 (D. Md. 2010) ("reluctance to sue one's employer may inhibit some potential claimants," therefore a "class action is well-suited to protect their rights").

Here, Class Representatives contend a class action is superior to other methods of adjudication. First, the objectives of this lawsuit—recovering unpaid overtime for all current and former hourly non-exempt employees within the state statute of limitations period—can be fairly and efficiently achieved through the class resolution of this case. Second, the pertinent factors listed in Rule 23(b)(3)(A)–(D) point toward a class action being the superior method of adjudicating this case.

Under the Rule 23(b)(3)(A) factors, none of the Current Plaintiffs before this Court have expressed a desire to prosecute their claim individually—indeed, in addition to the Claim Representatives, 262 Plaintiffs joined this action and consented to abiding by the decisions of the Class Representatives.

The superiority factor in Rule 23(b)(3)(B) is likewise resolved in favor of class resolution because resolving this matter on a class wide basis only promotes judicial efficiency. Class-wide resolution of this matter is superior to the alternative of litigating 1,142 individual lawsuits. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982).

The Rule 23(b)(3)(C) factor also demonstrates the superiority of this class action in this forum because Northstar Café maintained its corporate headquarters within District and Division. This Court therefore has a substantial interest in the resolution of the issues raised in this litigation occurring in

29

one forum. Accordingly, this particular forum is the most desirable and convenient forum, and superior to any other forum for this action to proceed.

Finally, and practically, a class action is superior here because the alternative method of adjudication requires holding hundreds of separate trials. Class resolution achieves economies of time, effort, and expense, and promotes uniformity of decision. *See Id.* (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (noting that of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### C. The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation

The preliminary approval of a proposed settlement is based on the Court's "familiarity with the issues and the evidence of the case as well as the arms-length nature of the negotiations prior to the settlement. *Robinson v. Ford Motor Co.*, Nos. 1:04 CV 00844, 1:04-CV-00845, 2005 WL 5253339, at *3 (S.D. Ohio June 15, 2005). The court "should also determine that the settlement is neither illegal nor collusive." *See id.* In the event that the court find that the settlement falls within the range of possible approval, notice is issued, and a fairness hearing is scheduled. *See Id.*

At this step, the court is only to determine whether there is "probable cause" that the proposed settlement is fair and reasonable. *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1380 (D. Md. 1983). A settlement is fair where it is the product of good-faith, arm's length bargaining without collusion. *In re Jiffy Lube*, 927 F.2d 155, 159 (4th Cir. 1991). In determining preliminary fairness, courts look at "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Id.*; Newberg on Class Actions § 13:13 (5th ed. 2011); *Cross*, 2019 WL 12288177, at *3.

1.      The Proposed Settlement is Fair

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been contested from the beginning.

i.      *Posture of the Case*

This case involves a hybrid collective/class action that was originally filed May 25, 2023. The Parties litigated and negotiated the claims at issue for over a year before agreeing on the terms of this proposed settlement. Before the Parties resolved this case, however, Northstar Café provided extensive data for thirteen (13) of the Current Plaintiffs and based on that information (and the significant documentation received from Class Representatives and the other Current Plaintiffs) Class Counsel drafted a damages model that permitted them to meaningfully negotiate the settlement before this Court. In addition to the payroll data provided by Northstar Café, Class Counsel also spent considerable time conferring with Class Representatives to better understand their specific claims and to ensure that the data provided by Northstar Café and the damages model based on that data, were in line with the Class Representatives' and other Current Plaintiffs' allegations.

The Parties mediated live before an experienced mediator, Jerome F. Weiss, Esq. on October 18, 2023. The Parties' mediation was not successful; however, they continued to negotiate on their own, resulting in several requests for stay of proceedings, which the Court granted so that the parties could work together to draft the comprehensive Agreement for this Court's review and approval.

ii.      Extent of Discovery

The Parties conducted discovery sufficient to allow them to understand the case, the range of damages, and to assess the potential varying outcomes of the case. The Parties engaged in both informal and formal discovery and conducted significant discovery related to hours worked and potential damages. This case only settled after the Parties performed an exacting review of the relevant

31

data provided and the Parties agreed to attempt mediation after an exchange of discovery. Class Counsel analyzed the weekly payroll during the Tolled Period for thirteen (13) of the Current Plaintiffs, including their tip information.[53] Class Counsel gathered documentation and interviewed all of the Current Plaintiffs.[54] After several months of analysis, the Class Counsel and the Claim Representatives developed a damages model and sent Defendants their demand. These conversations allowed Class Counsel to meaningfully negotiate on behalf of the Total Class Members.

Discovery in this case has been sufficient such that the Parties know the vital facts affecting the case and have adequately assessed the respective benefits of settlement and potential risks of continued litigation.[55] In addition, Class Counsel committed substantial resources to investigating and analyzing the claims of the putative class.[56] The proposed settlement calculations are based significantly on the payroll data exchanged in discovery on behalf of the Putative Opt-In Plaintiffs, supporting the fairness of the overall proposed settlement.

iii.  <u>Circumstances Surrounding the Negotiations</u>

The negotiations that resulted in this settlement were conducted at arms'-length before respected wage and hour mediator, Jerome F. Weiss, Esq. The Parties agreed to a resolution, in principle, approximately three weeks after close of the formal mediation and have continued to work together since that time to fully finalize the Agreement before this Court. The Parties exchanged multiple drafts of the Agreement and held multiple further conferences to address settlement issues as they arose during the drafting process.[57]

---

[53] *See* **Ex. E**. at ¶¶ 16-18.

[54] *See Id.*

[55] *See* **Ex. E**. at ¶39.

[56] *See Id.*

[57] *See* **Ex. E**. at ¶ 40.

#61618591v3

iv.    Experience of Counsel

Class Counsel is an experienced litigator who has devoted his practice to representing employees in wage and hour litigation across the United States.[58] Likewise, Northstar Café's Counsel are experienced in wage and hour litigators and represent employers across the United States in state and federal courts. Class Counsel have hundreds of class, collective, and individual actions seeking the recovery of unpaid wages, and have previously represented (or are currently representing) thousands of tip-pool employees seeking to recover unpaid wages on both federal, state, and common law claims. *See id.*

An examination of the four fairness factors clearly demonstrates this proposed settlement is not the result of collusion, but is the product of good-faith, arm's length bargaining overseen by Jerome F. Weiss, Esq., an impartial mediator. Therefore, the Parties have established the proposed Agreement falls "within the range of possible approval." *Miller*, 2020 WL 2896913, at *6 (citing *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds in Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (same) (citing MANUAL FOR COMPLEX LITIGATION, § 30.41 (3rd ed. 1995)). As a result, it is appropriate to direct notice to the Ohio Rule 23 Second Chance Class members and to schedule a final approval hearing to consider the final fairness of the Settlement Agreement, including any objections that may be filed and Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Costs.

---

[58] *See generally* **Ex. E**. at ¶¶ 4-13.

## VII.    CONCLUSION

The Claim Representatives respectfully request that the Court approve the § 216(b) Settlement and preliminary approve the Ohio Rule 23 Second Chance Settlement and enter the Proposed Order provided as attached to this Motion.

Dated: June 17, 2025                                  Respectfully submitted,

/s/ Robert E. DeRose                             /s/ Jan E. Hensel
Robert E. DeRose (0055214)              Jan E. Hensel (0040785)
Anna R. Caplan (0104562)                  H. Devon Collins (0095657)
**BARKAN MEIZLISH DEROSE COX, LLP**    **Dinsmore & Shohl, LLP**
4200 Regent Street, Suite 210            191 W. Nationwide Blvd., Ste. 200
Columbus, OH 43219                        Columbus, OH  43215-5134
Phone: (614) 221-4221                       Phone: (614) 628-6880
Fax: (614) 744-2300                           Fax: (614) 628-6890
Email:  bderose@barkanmeizlish.com   Email:        jan.hensel@dinsmore.com
                                                                        devon.collins@dinsmore.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Ohio, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Robert E. DeRose
Robert E. DeRose

34